## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GREGORY YATOOMA,

           Plaintiff,        Case No. 23-cv-13050

v.                                       Hon. Brandy R. McMillion

CHRISTOPHER YATOOMA, MSY
CAPITAL PARTNERS, LLC, RICH
STOPCZY, and MICHELLE
HOUBECK,

           Defendants.

---

**OPINION AND ORDER DECLINING SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS, REMANDING COUNTS I-XII BACK TO STATE COURT, ORDERING THE RECEIVER TO SUBMIT ANY REPORT TO THE STATE COURT, AND DENYING AS MOOT PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (ECF NO. 45), DEFENDANTS' MOTION FOR LEAVE TO FILE COUNTERCLAIM (ECF NO. 36), AND DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION OR, ALTERNATIVELY, FOR APPOINTMENT OF RECEIVER (ECF NO. 37)**

---

This case arises out of the deteriorated business relationship of two brothers: Plaintiff Gregory Yatooma ("Greg") and Defendant Christopher Yatooma ("Chris"). *See generally* ECF No. 1-2, PageID.1431-1477. Greg originally filed this case in Oakland County Circuit Court against Chris and MSY Capital Partners, LLC ("MSY"). The case was removed to this Court after Greg named additional

Defendants Rich Stopczy and Michelle Houbeck (collectively, with Chris and MSY, "Defendants") for their alleged unlawful access of Greg's email in violation of federal law. *See id.* The three federal statutes that serve as the basis for removal are the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.* (Count XIV), the Federal Wiretap Act, 18 U.S.C. § 2510 *et. seq.* (Count XV), and the Stored Communications Act, 18 U.S.C. § 2701 *et. seq.* (Count XVI). *See* ECF No. 1, PageID.3. The remaining sixteen claims in this action arise under state law including, *inter alia*, breach of partnership, breach of contract, and declaratory relief as to the ownership of MSY and entitlement to the MSY Litigation proceeds. *See* ECF No. 1-2, PageID.1453, 1458, 1462. Only four of the state claims pertain to the unlawful access of Greg's email that underlies Greg's federal claims. *See id.* at PageID.1431-1477.

For the reasons below, the Court **DECLINES** to exercise supplemental jurisdiction over Greg's state law claims that do not relate to the unauthorized access of Greg's email and will therefore **REMAND** Counts I-XII back to state court. As a result, the previously appointed receiver is **ORDERED** to submit her report and findings to the state court, and the Court **DENIES AS MOOT** Plaintiff's Motion for Protective Order (ECF No. 45), Defendants' Motion for Leave to File Counterclaim (ECF No. 36), and Defendant's Motion for Preliminary Injunction or, Alternatively, for Appointment of Receiver to take Possession of Certain Payments (ECF No. 37).

**I.**

***A. The Yatooma Brothers Business Dealings and the MSY Litigation***

In 2016, Greg and Chris, together with their brother Jeffrey Yatooma ("Jeff") ventured into Michigan's emerging cannabis industry by, among other things, obtaining municipal cannabis licenses for various types of businesses and selling those entities at a profit. ECF No. 10-2, PageID.1889. They worked together, owned, and operated several business ventures, including MSY and other entities formed for the use of their cannabis business partnership (the "Partnership Entities"). *Id.* According to Greg, the three brothers agreed and understood that they each owned one-third of the Partnership Entities. *See* ECF No. 10-3, PageID.1940-41 (Chris Dep. 41:19-42:12). One of the assets procured by Greg and Jeff for the Partnership Entities was an agreement between MSY and LIV Wellness, LLC ("Liv") to jointly own and operate a medical marijuana retail provisioning center business in Ferndale, Michigan. At the end of 2018, Jeff separated from Greg and Chris, and on November 13, 2019, the three brothers executed a formal agreement pursuant to which Greg and Chris purchased Jeff's one-third interest in the Partnership Entities. *See* ECF No. 10-4.

In 2019, MSY filed suit in Oakland County Circuit Court against Liv claiming breach of the agreement procured by Greg and Jeff. *See* ECF No. 10-2 at PageID.1895. After a jury trial, the jury returned a verdict of $19 million for MSY.

*Id*. Liv appealed, but the parties reached a settlement while the appeal was pending. Both Greg and Chris signed the Confidential Settlement Agreement on behalf of MSY. *Id.* On April 12, 2023, the MSY Litigation Proceeds were deposited into an account of MSY's attorneys, Dykema Gossett PLLC, for further distribution to Chris and Greg. ECF No. 10-2 at PageID.1902.

### B. *Greg and Chris' Buyout Agreement*

There was a significant breakdown in Greg's and Chris's relationship in 2022. *Id*. at PageID.1895. Negotiations in the Fall of 2022 for a buyout of Greg's ownership and interest in the Partnership Entities resulted in a December 14, 2022, written agreement (the "Buyout Agreement") signed by Greg, Chris, and three witnesses. *See* ECF No. 1-2, PageID.1497. Greg alleges that pursuant to the Buyout Agreement, he agreed to assign his interests in several of the Partnership Entities to Chris in exchange for $18,300,000. *See id.* Greg asserts that Chris breached the Buyout Agreement by, in part, refusing to pay Greg the amounts outlined in the agreement, refusing to split the MSY Litigation Proceeds, and attempting to take possession of 100% of MSY.

### C. Chris Accesses Greg's Email

On December 20, 2022, six days after Greg and Chris signed the Buyout Agreement, Rich Stopczy[1] came to Greg's house and removed Greg and his assistant from the shared servers with Chris. ECF No. 10, PageID.1873. At that time, Stopczy also confirmed to Greg that no one had access to Greg's FYB email nor could access Greg's computer desktop without Greg's permission. *Id.*

But, on January 13, 2023, Stopczy downloaded Greg's entire email account and saved those emails to Michelle Houbeck's[2] computer, allegedly at Chris' direction. ECF No. 1-2, PageID.1446. Greg's emails were accessed and downloaded again on February 14, 2023. *Id.* According to Greg, Stopczy "exceeded his authority with respect to the FYB email accounts" and Chris continues to access his email account without authorization. *Id.* at 1446, 1453.

### D. *Greg's Amended Complaint and Removal to This Court*

Greg amended his complaint on November 7, 2023, to include claims related to the unauthorized access of his emails (hereinafter, "the Email Claims") and add Defendants Rich Stopczy and Michelle Houbeck. The Email Claims included three

---

[1] Rich Stopczy is a W-2 employee of Axon Properties (one of the Partnership Entities) as well as the IT manager for Fleming Yatooma Borowicz (Greg's law firm) (hereinafter, "FYB") and all of the Partnership Entities.

[2] According to Greg's Amended Complaint, Houbeck has been Chris's executive assistant since July 2018. ECF No. 1-2, PageID.1446. Allegedly, the stolen emails were stored on her computer for "her to review and print" for Chris. *Id.*

5

federal claims and four state claims. The federal claims are: the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.* (Count XIV), the Federal Wiretap Act, 18 U.S.C. § 2510 *et. seq.* (Count XV), and the Stored Communications Act, 18 U.S.C. § 2701 *et. seq.* (Count XVI). The state claims are: Declaratory Relief as to Access and Administrative Rights to Greg's FYB Email (Count XIII); Invasion of Privacy (Intrusion Upon Seclusion) (Count XVII); Conversion Pursuant to Common Law and Mich. Comp. Laws § 600.2919a (Count XVIII); and Civil Conspiracy (Count XIX). Defendants removed the case to this Court on December 1, 2023. ECF No. 1.

## II.

A federal district court "has the power to dismiss or remand claims *sua sponte* for lack of subject matter jurisdiction." *Commodities Exp. Co. v. City of Detroit*, No. 09-CV-11060-DT, 2010 WL 3905482, at *15 (E.D. Mich. Sept. 30, 2010). "Claims with original jurisdiction in a district court have either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332." *Michigan Paralyzed Veterans of Am. v. Charter Twp. of Oakland, Mich.*, No. 14-14601, 2015 WL 4078142, at *3 (E.D. Mich. July 2, 2015). A district court may also hear "purely state law claims . . . under the supplemental jurisdiction granted federal courts under 28 U.S.C. § 1367." *Id.* at *3. The district court has discretion as to exercise supplemental jurisdiction over the state law claims if they

"are so related . . . that they form part of the same case or controversy" as the federal claims over which the Court has original jurisdiction. *Id.* at \*4; 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

However, the district court "need not exercise its authority to invoke supplemental jurisdiction in every case in which it is possible to do so." *Estate of Johnson v. City of Detroit*, 2022 WL 5102019, at \*5 (E.D. Mich., 2022) (citing *Gibbs*, 383 U.S. at 726). "The question of whether a court may assert supplemental jurisdiction over state claims remains open throughout the litigation." *Hussain Alfatlawy v. City of Detroit et al.*, 2024 WL 4678138, at \*5 (E.D. Mich., 2024); *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021).

Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right. *Gibbs*, 383 U.S. at 726. Justification for this doctrine "lies in considerations of judicial economy, convenience, and fairness to litigants." *Johnson*, 2022 WL 5102019, at \*5. Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a pendent state claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367 (c).

## III.

### A. The State Claims Substantially Predominate Over Federal Claims

"[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed . . . ." *Gibbs*, 383 U.S. at 726–27. The district court should dismiss the state law claims if they will "cause a substantial expansion of the suit beyond that necessary and relevant to the federal claims." *Michigan Paralyzed Veterans*, 2015 WL 4078142, at *5.

Here, the three federal statutes that serve as the basis for removal to this Court pertain to Greg's allegations that Defendants unlawfully accessed and downloaded emails from his email account. ECF No. 1-2, PageID.1446-1453.[3] Only four of the remaining state law claims relate to the allegedly unlawful access of Greg's email. ECF No. 1-2, PageID.1467, 1473-1476.[4] All twelve of the other nineteen claims arise out of state law and pertain to the severance of the brothers' business partnership, the related disagreement about the validity and enforceability of the

---

[3] Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq*. (Count XIV), the Federal Wiretap Act, 18 U.S.C. § 2510 *et. seq.* (Count XV), and the Stored Communications Act, 18 U.S.C. § 2701 *et. seq.* (Count XVI).

[4] Declaratory Relief as to Access and Administrative Rights to Greg's FYB Email (Count XIII), Invasion of Privacy (Intrusion Upon Seclusion (Count XVII), Conversion Pursuant to Common Law and Mich. Comp. Laws § 600.2919(A) (Count XVIII), Civil Conspiracy (Count XIX).

Buyout Agreement, and ownership of the MSY Litigation Proceeds. *See* ECF No. 1-1, PageID.1453-1476.[5]

The state law claims in this case are both broader and more numerous than the federal claims. *See Michigan Paralyzed Veterans*, 2015 WL 4078142, at *5. Exercising jurisdiction over the state claims unrelated to the Email Claims would require this Court to delve into factual and legal analysis surrounding Greg and Chris' business relationship. The Court would have to determine whether that relationship constituted a formal partnership, the validity and enforceability of the Buyout Agreement, and related questions about ownership of entities and funds therefrom. Whereas the Court need only delve into the circumstances surrounding the alleged unlawful email access and law governing the validity of that access to decide the Email Claims. Were this Court to exercise supplemental jurisdiction over these claims, it would substantially expand the scope of the litigation. *Id.*

Similarly, although there is some minor factual overlap between Greg's state and federal claims, this Court finds they are factually distinct enough that other

---

[5] Breach of Partnership Against Chris (Count I), Breach of Partnership Fiduciary Duties Against Chris (Count II); Breach of Joint Venture, in the Alternative Against Chris (Count III), Breach of Joint Venture Fiduciary Duties, In the Alternative Against Chris (Count IV), Declaratory Relief as to Ownership of the Joint Entities (Count V), Breach of Contract Against Chris (Count VI), Promissory Estoppel, In the Alternative Against Chris (Count VII), Unjust Enrichment, in the Alternative, and Declaratory Relief as to Ownership of Frequency and Candid Against Chris (Count VIII), Declaratory Relief as to Ownership of MSY and Entitlement to the MSY Litigation Proceeds (Count IX), Dissolution of MSY Pursuant to Mich. Comp. Laws § 450.4802 (Count X), Fraudulent Inducement Against Chris (Count XI), Dissolution of Greg's and Chris's Partnership (Count XII).

factors outweigh this in the Court's consideration. *See Estate of Johnson v. City of Detroit*, 2022 WL 5102019, at *6 (E.D. Mich., 2022) (declining to exercise supplemental jurisdiction even where the federal and state claims arose out of the "same factual background" because that fact was outweighed by considerations of judicial economy, convenience to the parties, and the potential of jury confusion).

Moreover, this Court has previously declined to exercise supplemental jurisdiction over the state law claims that made up the "heart" of a plaintiff's case. *See Michigan Paralyzed Veterans*, 2015 WL 4078142, at *5. Because the deterioration of the brothers' partnership is at the heart of this case, it would predominate over any federal issues associated with the alleged email hacking. *See id.*

**B.     Other Compelling Reasons for Declining Supplemental Jurisdiction**

"For the purposes of § 1367(c)(4), compelling reasons should be those that lead a court to conclude that declining jurisdiction best accommodates the values of economy, convenience, fairness, and comity." *Johnson*, 2022 WL 5102019, at *6 (internal quotation marks and citation omitted). "The circumstances of a particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims (including the possibility of jury confusion) inform the decision to exercise or decline supplemental jurisdiction." *Id.*

Several months of litigation took place in Oakland County Circuit Court before removal. ECF No. 10, PageID.1862; *see also* ECF No. 1-1, 1-2. The state law claims in this litigation, and the claims currently stayed in Case No. 2024-204877-CB before Oakland County Circuit Court Judge Michael Warren, deal with the same questions of the brothers' partnership, the enforceability of the Buyout Agreement, and who owns and controls the many Partnership Entities. *See* ECF No. 45-3, PageID.4364. The Court is mindful that even more litigation could arise that would hinge on these same questions. After all, there are a number of other contested Partnership Entities that Chris or Greg could sue on behalf of that would require a court to determine the extent of the brothers' partnership, ownership of the entity, and whether the Buyout Agreement was enforceable.

This Court will not further protract and complicate proceedings in this case—particularly when the Honorable Michael Warren of the Oakland County Circuit Court is willing to answer the question, is better positioned to address the state law claims, and sits in the court more familiar with the facts of this case. *See* ECF No. 45-3. While the Court recognizes that it has an interest in resolving the federal claims raised in this action, in the interest of judicial economy, convenience, and fairness, the Court will only exercise supplemental jurisdiction over the state claims captured within the Email Claims (Counts XIII, XVII, XVIII, and XIX).

11

**IV.**

Based on the foregoing reasons, the Court remands Counts I-XII of Greg's Amended Complaint to the Oakland County Circuit Court. Because the Court has remanded those claims, Plaintiff's Motion for Protective Order (ECF No. 45), Defendants' Motion for Leave to File Counterclaim (ECF No. 36), and Defendant's Motion for Preliminary Injunction or, Alternatively, for Appointment of Receiver to take Possession of Certain Payments (ECF No. 37) are denied as moot to be reraised in the state if so desired. The Court will hear from the parties with respect to Plaintiff's Motion for Preliminary Injunction (ECF No. 35) at the scheduled motion hearing set for December 11, 2024. ECF No. 50.

Accordingly, **IT IS ORDERED** that Counts I-XII of Plaintiff's Amended Complaint are **REMANDED** to the Circuit Court for Oakland County, pursuant to 28 U.S.C. § 1367(c).

**IT IS FURTHER ORDERED** that the previously appointed Receiver, Kay Kress of Troutman Pepper Hamilton Sanders LLP, shall submit her report and findings to the state court, in accordance with the previously issued Orders of this Court (ECF No. 38) and the state court (ECF No. 10-10).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Protective Order (ECF No. 45), Defendants' Motion for Leave to File Counterclaim (ECF No. 36),

and Defendant's Motion for Preliminary Injunction or, Alternatively, for Appointment of Receiver to take Possession of Certain Payments (ECF No. 37) are **DENIED AS MOOT** with these issues to be reraised in the state court if the parties so desire.

**IT IS SO ORDERED.**

Dated: November 13, 2024          s/Brandy R. McMillion
                                               BRANDY R. MCMILLION
                                               United States District Judge